# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

DVORA WEINSTEIN and STEVEN S.
WEINSTEIN, Individually and On Behalf of All
Others Similarly Situated,

            Plaintiffs,

        -v-

AUBREY K. MCCLENDON, DOMENIC J.
DELL'OSSO, JR., MARCUS ROWLAND,
MICHAEL A. JOHNSON, JEFFREY L.
MOBLEY, HENRY HOOD, and CHESAPEAKE
ENERGY CORPORATION,

            Defendants.

**Case No.: 12:5-cv-00465-M**

**CLASS ACTION**

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

    A.    The Complaint Is A Classic Example Of Puzzle Pleading ......................... 4

    B.    Plaintiffs' Attempts To Discount The Absence Of Insider Sales Is Unavailing ............................................................................................... 5

    C.    There Are No Specific Allegations To Show Any  Defendant's Scienter .................................................................................................. 7

    D.    Plaintiffs Misstatement Allegations Are Refuted By Both  Federal Disclosure Guidelines and Chesapeake's Filings......................................... 9

          1.    Chesapeake Properly Disclosed the Details of the FWPP .............. 10

          2.    The VPP Disclosures Were Complete and Accurate ...................... 12

CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Andropolis v. Red Robin Gourmet Rest., Inc.*,
   505 F. Supp. 2d 662 (D. Colo. 2007)............................................................................7

*Caprin v. Simon Trnsp. Servs. Inc.*,
   99 F. App'x 150 (10th Cir. 2004) ................................................................................7

*Chechele v. Ward*,
   2011 U.S. Dist. LEXIS (W.D. Okla. April 13, 2011)....................................................3

*City of Omaha Emp. Ret. Sys. v. CBS Corp.*,
   2010 WL 1029290 (S.D.N.Y. March 16, 2010) ........................................................11

*City of Phila. v. Fleming Cos., Inc. ("Fleming I")*,
   CIV-96-853-M, Slip. Op. (W.D. Okla. Mar. 4, 1999)..................................................9

*City of Phila. v. Fleming Cos., Inc. ("Fleming III")*,
   263 F.3d 1245 (10th Cir. 2001) ..................................................................................8

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ..................................................................................4

*In re Alcatel Sec. Litig.*,
   382 F. Supp. 2d 513 (S.D.N.Y. 2005)..........................................................................5

*In re Digital Island Sec. Litig.*,
   357 F.3d 322 (3d Cir. 2004)........................................................................................7

*In re First Union Corp. Sec. Litig.*,
   128 F. Supp. 2d 871 (W.D.N.C. 2001) ........................................................................6

*In re HomeBanc Corp. Sec. Litig.*,
   706 F. Supp. 2d 1336 (N.D. Ga. 2010) ........................................................................7

*In re Novastar Fin., Inc. Sec. Litig.*,
   2008 WL 2354367 (W.D. Mo. June 4, 2008), *aff'd*, 579 F.3d 878 (8th Cir.
   2009) ............................................................................................................................13

*In re Pre-Paid Sec. Litig.*,
 CIV-01-0182-C, Slip. Op. (W.D. Okla. Mar. 5, 2002), *aff'd* 189 F. App'x 702
 (10th Cir. 2006) ...................................................................................................... 9

*In re Radian Sec. Litig.*,
 2010 WL 1767195 (E.D. Pa. Apr. 30, 2010) ................................................................ 6

*In re Safeguard Scientifics*,
 2004 WL 2700291, at *2 (E.D. Pa. Nov. 18, 2004) ..................................................... 11

*Kunz v. S.E.C.*,
 2003 WL 1605865 (10th Cir. March 28, 2003) ........................................................... 12

*Mark v. FlemingComp. Inc.*,
 CIV-96-506, Slip. Op. (W.D. Okla. Mar. 4, 1999) ...................................................... 9

*Mathews v. Centex Telemgm't, Inc.*,
 1994 WL 269734 (N.D. Cal. June 8, 1994) ................................................................. 6

*McNamara v. Pre-Paid Legal Servs., Inc.*,
 189 F. App'x 702 (10th Cir. 2006) .............................................................................. 6

*Middlesex v. Quest*,
 527 F. Supp. 2d 1164 (C.D. Cal. 2007) ....................................................................... 7

*Pugh v. Tribune Co.*,
 521 F.3d 686 (7th Cir. 2008) .................................................................................. 5, 7

*Snellink v. Gulf. Res.*,
 870 F. Supp. 2d 930 (C.D. Cal. 2012) ........................................................................ 11

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S.308 (2007) ............................................................................................. 5, 7, 9

*Zagami v. Natural Health*,
 540 F. Supp 2d 705 (N.D. Tex. 2008) ................................................................... 11, 12

## <u>STATUTES</u>

17 C.F.R.
    Section 210.4-10 ................................................................................................ 13
    Section 229.401(a) ............................................................................................. 13
    Section 303(a)(4) ............................................................................................... 13
    Section 404(a) ................................................................................................... 11

## <u>RULES</u>

Federal Rules of Civil Procedure
    Rule 12(b)(6) ..................................................................................................... 10

<u>**INTRODUCTION**</u>

Plaintiffs are adamant that the Complaint asserts allegations of "**fraud**, not mere mismanagement." Opp. at 18 (emphasis added).[1] To successfully assert fraud, however, the Complaint must satisfy the Reform Act's rigorous pleading burden, one that requires it to only to connect specific misstatements with the reasons why they were misleading, but also allege **facts** -- names, dates, time, places -- to show Defendants had a fraudulent intent. The Complaint's scattershot claims of falsity and conclusions about scienter cannot begin to meet that standard.

Case in point: the Complaint alleges Defendants falsely claimed the use of Volumetric Production Payments ("VPP") would reduce the Company's debt when, the "truth was, the VPPs increased -- not reduced -- debt." Now, in their Opposition, Plaintiffs concede that the VPP's "**do not constitute debt and thus do not create any debt or liability to place the balance sheet**." Opp. at 16. That admission not only eviscerates the Complaint's VPP allegations, but is emblematic of the Complaint's failings as a whole. Whenever its allegations are read in light of the law or judicially noticeable facts, they fall apart.

More damningly, the Complaint is unable articulate any coherent story about **why** Defendants would have perpetrated the alleged fraud.[2] Plaintiffs concede that none of the

---

[1] "Opp." refers to Plaintiffs' Opposition. "MTD" refers to Defendant's Motion to Dismiss. "Compl." refers to the Complaint.

[2] Plaintiffs concede they must plead with particularity "the who, what, when, where and why" of the alleged fraud (Opp. at 10), but in this case the analysis needs to go further than the "why."

Defendants sought to profit from the alleged fraud (Opp. at 26), and all of them actually "increased their [Chesapeake] holdings" during the period. *Id.* at 27. Yet still Plaintiffs insist Defendants had some other ill-defined "motive" to commit fraud (Opp. at 21), were in the "position to know" "true" information and purposefully did not disclose it (*id.* at 23) and made incorrect SOX certifications (*id.* at 24). Those sorts of boilerplate scienter conclusions -- without specific factual support -- are patently insufficient to establish fraud. *See* MTD at 7-10, 12, 22-24.[3]  In sum, and taking into account all facts and circumstances, the Complaint cannot be said to raise **any** inference of scienter, let alone the compelling inference required by law.

The Complaint's disclosure claims fare no better.  In the first instance, the Complaint is impermissibly puzzle pled, and contains zero allegations that cite "specific misstatements" and then state "why the statements are false."  MTD at 6-7.  The Opposition tries to refute this point in a section entitled "the Complaint is not a puzzle-pleading" (Opp. at 30), but tellingly cannot connect **even one** specific misstatement to why it was false.  It cites fifty-six paragraphs in the Complaint to "identify each material misstatement (¶¶ 122-178)," and the same fifty-six paragraphs to "state the reason why the statement was false (*id.*)." Opp. at 30.  In effect, the Opposition **concedes** the Complaint is puzzle pled.

---

[3] Plaintiffs' disparate scienter theories hit the wall with the Opposition's new assertion that Mr. Hood was "betting **against the Company**" by selling call options.  Opp. at 2 (emphasis added).  Are Defendants being accused of trying to artificially inflate the Company's share price—*see* Compl. ¶ 15 ("as a result of Defendants' fraud, Chesapeake's stock price climbed steadily throughout the period")—or trying to drive it down?

Wading through the chaff, it becomes apparent that the Complaint's allegations are unanimously on the wrong side of both the facts and the law.  The Opposition ignores both and, incredibly, **insists the Court must ignore them as well**.  Opp. at 12.[4]  As Plaintiffs would have it, the "Court **must** accept" the Complaint's bogus reading of Chesapeake's disclosures and the federal disclosure guidelines "as true."  *Id.*[5]

But that is absolutely not the rule, and as any reasonable review of the targeted disclosures and federal guidelines cited in the Complaint shows, Chesapeake disclosed what Plaintiffs complain was omitted.  *See* MTD at 13-22.  Chesapeake long disclosed that Mr. McClendon entered into "personal financing transactions" involving his FWPP interests (MTD at 17) and was required to pay **all** development costs associated with those interests.  *Id.* at 15-16.  Chesapeake also disclosed the operating costs associated with the VPPs.  *Id.* at 19.  The things Chesapeake did **not** disclose -- *e.g.*, the "magnitude" of Mr. McClendon's **personal** loans (Opp. at 11), the "debt" associated with

---

[4] The Opposition brazenly argues that by disputing the Complaint's misreading of federal disclosure claims, Defendants are improperly "asking the Court to interpret GAAP and decide a factual question."  Opp. at 13.  Of course, the interpretation of federal disclosure guidelines is a **legal** question, one that has been repeatedly asked and answered by this Court. *See, e.g.*, *Chechele v. Ward,* 2011 U.S. Dist. LEXIS, at *11-14 (W.D. Okla. April 13, 2011) (Miles-LaGrange, J.); *Mark. v. Fleming Comp. Inc.*, CIV-96-506–M, slip op. at 10 (W.D. Okla. Mar. 4, 1999) (Miles-LaGrange, J.).

[5] Which version of Plaintiffs' story should the Court blindly accept?  Their repeated allegation that VPP obligations are unreported "debt" (Opp. at 4, 15, 17, 18) or their concession that the VPPs "do not constitute debt"?  *Id.* at 16.  Their allegation that Mr. McClendon's loans "created substantial conflicts of interest" (*id.* at 1), or the admission that there was only the "possibility" (*id.* at 2) or "implication" (*id.* at 7) of a conflict?  Their allegation that Chesapeake did not disclose "the future [VPP] costs Chesapeake was obligated to pay" (*id.* at 3), or their admission that Chesapeake **did** actually disclose the costs, but just "did not break [them] out" (*id.* at 16)?

VPP's (*id.* at 4) -- were not required to be disclosed,[6] or, in the case of VPP "debt,"

simply **do not exist.**  *See* Opp. at 19.

Faced with these and other irrefutable facts, Plaintiffs argue that "disclosure does

not hinge on formalities."  Opp. at 13.  Yet as the Opposition concedes elsewhere, to

survive this Motion to Dismiss, the Complaint must "plead with particularity" the "who,

what, when, where, and why the statements were plausibly false."  Opp. at 10 (citation

omitted).  Unable to meet that standard or raise any cognizable inference that a **fraud**

actually occurred, the Complaint must be dismissed.

### A.          THE COMPLAINT IS A CLASSIC EXAMPLE OF PUZZLE PLEADING

As Defendants detailed in their Motion, the Complaint is an exercise in

impermissible puzzle pleading (MTD at 6-7), and fails to adequately "set forth, as part of

the circumstances constituting fraud, an explanation as to why the disputed statements

[were] untrue or misleading when made."  *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124

(10th Cir. 1997).  The Complaint contains only **four** conclusory paragraphs that purport

to explain why the targeted statements were "false when made," and none of those four is

tied back to any specific misstatement.  MTD at 1, *citing* ¶¶ 132, 142, 159, 177.[7]  In

short:

---

[6] The Motion to Dismiss cites seven cases for the proposition that Chesapeake has no duty to disclose its officers' and directors' personal finances.  *See* MTD at 17 & n. 22. Tellingly, the Opposition does **nothing** to distinguish or even address those cases.  Opp. at 14.

[7] For example, paragraph 132 cites eleven different conclusory reasons (i - xi) for why the statements in nine different allegations (¶¶ 122-131) were purportedly false when made.  Paragraph 142 cites fifteen conclusory reasons for why the statements in eight different allegations (¶¶ 133-141) were purportedly false when made.

> Plaintiffs list various statements -- often setting forth lengthy quotations from various releases by Defendants' officers and securities analysts -- then follow each with a similar (in most cases identical) laundry list of 'specific' reasons why the statements are allegedly false.  Plaintiffs neglect to make it clear what portion of each quotation constitutes a false representation, or which statements link up with which issues in the laundry list, placing the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts.  **This method is deficient under the [PSLRA's] pleading standards**.

*In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005) (emphasis added).[8]

On this basis alone the Complaint should be dismissed.

**B.**     **PLAINTIFFS' ATTEMPT TO DISCOUNT THE ABSENCE OF INSIDER SALES IS UNAVAILING**

The Opposition argues that the absence of stock sales by the Individual

Defendants during the Class Period is irrelevant (Opp. at 26-27), but they are wrong.

*See* MTD at 10-12.  "*Tellabs* instructs [courts] to consider all potential inferences, and the

fact that the [Individual] [D]efendants are not alleged to have sold the[ir] stock at the

[allegedly] inflated prices mean[s] that they stood to lose a lot of money if the value of

[Chesapeake's] stock fell."  *Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008).[9]

---

[8] The Opposition's lame retort on this point is that the Complaint identifies "each material misstatement" and "the reasons why the statement was materially false" somewhere within the **same fifty-six paragraph block of allegations**.  Opp. at 30 (*citing* Comp. ¶¶ 122-178).  If anything, that response only buttresses the conclusion that the Complaint commits puzzle pleading.

[9] The Opposition's assertion that Mr. McClendon sold "$18 million worth of stock to exercise his options" (Opp. at 28 n.18) is flat wrong.  As Plaintiffs' own Exhibit 3 attached to their brief demonstrates, Mr. McClendon did not sell a **single** share of Chesapeake stock during the Class Period.  Instead, throughout the Class Period, $18 million dollars worth of stock was periodically **withheld** from Mr. McClendon by the Company -- as demonstrated by the SEC Form 4 transaction code "F" -- for tax liability purposes.  *See* Instructions to SEC Form 4, Transaction Codes, available at http://www.sec.gov/about/forms/form4data.pdf (indicating that transaction code "F"

Similarly, the fact that Messrs. McClendon and Dell'Osso -- the Company's highest ranking officers -- bought over $1.5 million worth of Chesapeake stock on the open market during the Class Period means that they "believed its stock was undervalued, not 'artificially inflated,'" *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 899 (W.D.N.C. 2001), as "[i]t would have made no sense to purchase that stock if [D]efendants knew the prices to be inflated," *Mathews v. Centex Telemgm't, Inc.*, 1994 WL 269734, at *8 (N.D. Cal. June 8, 1994).  Thus, to find scienter under these circumstances "would be to assume that the [Individual] [D]efendants intentionally defrauded [investors] **to their own ultimate detriment**. . . .  Courts **reject** such an inference that makes little economic sense." *In re Radian Sec. Litig.*, 2010 WL 1767195, at *12 (E.D. Pa. Apr. 30, 2010); *see, e.g.*, *McNamara v. Pre-Paid Legal Servs., Inc.*, 189 F. App'x 702, 717-18 (10th Cir. 2006) (affirming dismissal because inference of scienter was not "economically logical").

Plaintiffs' argument that the increase in the Individual Defendants' stock holdings throughout the Class Period "does not raise any inference of trust or confidence in Chesapeake's future" because the increase was largely due to compensation awards from the Company (Opp. at 27-28) misses the point.  Regardless of how the Individual Defendants acquired their shares, the fact remains that they did not sell them at the allegedly inflated prices, which means that they stood to lose a lot of money if the value

---

means payment of "tax liability by delivering or withholding securities incident to the receipt, exercise or vesting of a security").

of Chesapeake's stock fell.  *Pugh*, 521 F.3d at 695.[10]  Indeed, because the Individual

Defendants' "interests were at all times tied to the value of their shares, [there is] no basis

to infer the sort of conscious disregard and deliberate ignorance required to plead

scienter."  *In re Digital Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004).[11]

**C.**      **THERE ARE NO SPECIFIC ALLEGATIONS TO SHOW ANY DEFENDANT'S SCIENTER**

Putting to one side the fact that Defendants never sought to profit from the allege

fraud, the Complaint must be dismissed because it contains no specific factual allegations

to raise a strong inference of any Defendants' scienter.  *See* MTD at 8, *citing Caprin v.*

*Simon Trnsp. Servs., Inc.*, 99 F. App'x 150, 164 (10th Cir. 2004).  There are no Company

documents cited; no meetings referenced; no time, date or place averred to show that **any**

Defendant both "knew of a potentially material fact" **and** knew that "its non-disclosure

---

[10] *Tellabs* held that a "strong inference" of scienter is one that is "powerful" and "cogent," 551 U.S. at 322, but "any inference of scienter is **particularly weak** where, as here, the complaint fails to allege inside stock sales intended to take advantage of the company's purportedly inflated stock prices." *In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1359 (N.D. Ga. 2010); *see, e.g., Andropolis v. Red Robin Gourmet Rest., Inc.*, 505 F. Supp. 2d 662, 678 (D. Colo. 2007) ("[T]he inference of scienter in this case is **particularly weak** given that Plaintiff does not allege inside stock sales intended to take advantage of Red Robin's purportedly intentional inflation of earnings").

[11] Plaintiffs mistakenly rely on *Middlesex v. Quest*, 527 F. Supp. 2d 1164 (C.D. Cal. 2007) to argue that the absence of stock sales is irrelevant because "Defendants did not control the timing or content of the disclosures." Opp. at 28. In that case, the defendants were alleged to have sold millions of shares during the class period for proceeds totaling approximately $38 million, and argued that these sales did not support a finding of scienter because the sales were not made immediately before "the revelation of the inside-information," and thus were not suspiciously timed. *Id.* at 1186. The court rejected this argument because the revelation of the purported fraud was not in the defendants' control. *Id.* Here, the Individuals Defendants are not alleged to have sold **any** stock during the Class Period, so the question of whether the timing of defendants' stock sales negates or supports an inference of scienter is **irrelevant**.

would likely mislead investors." *See* MTD at n. 5, *citing City of Phila. v. Fleming Cos., Inc.* ("*Fleming III*"), 264 F. 3d 1245 (10th Cir. 2001).

The Opposition argues Mr. McClendon possessed scienter because he "had actual knowledge of his FWPP loans." Opp. at 21.[12]  Of course he did—they are his **personal** loans.  *See* MTD at 16.  But absent additional specific allegations to show Mr. McClendon knew that not disclosing the "magnitude of the loans" (Opp. at 11) would somehow mislead investors, his knowledge of the loans in and of themselves is irrelevant to the scienter analysis.[13]

In the alternative, Plaintiffs assert that Mr. McClendon "had a financial motive to conceal the loans to ensure the FWPP's continuation." Opp. at 22.  As the Motion to Dismiss details, however, Mr. McClendon has had **negative cash flows** resulting from the FWPP since the inception of the program (MTD at n. 17), and, in any event, "merely alleging that executives 'aim to prolong the benefits of the position they hold' is not

---

[12] Plaintiffs take Defendants to task for having "the temerity to argue that Plaintiff avers scienter only based on McClendon's senior position," that, in fact, "McClendon knew of the [FWPP] loans because he signed them, not because of his position." Opp. at 21, *citing* Compl. ¶ 87.  Paragraph 87 does not aver that Mr. McClendon had scienter because he signed loans, nor does any other paragraph in the body of the Complaint.  *See* MTD at n. 6 (*citing* Compl. ¶¶ 29, 81, 89, 92, 186).  Moreover, the Complaint's "additional scienter allegations" (¶¶ 179-183) are founded exclusively on the "imputed knowledge of facts critical to core operations," which is to say they aver scienter based exclusively on Defendants' -- including Mr. McClendon's -- senior positions.

[13] Similarly unavailing is the Opposition's conclusory assertion  that Mr. McClendon's scienter can be evidenced by his "motive to conceal his FWPP loans and the conflict they created with Chesapeake." Opp. at 21; *see also* Opp. at 22 (and/or Mr. McClendon wanted to conceal the "appearance of conflicts").  There are no allegations to show Mr. McClendon sought to "conceal" his personal loans (*see, e.g.*, MTD at 23 ("investors have known for years that McClendon has borrowed against" his FWPP assets), and no allegations, specific or otherwise, to show his loans somehow created a "conflict" with the Company.  *See* MTD 14-18, and discussion, *infra*.

sufficient to support the inference of fraud." *Mark v. FlemingComp. Inc.*, No. CIV-96-506 (W.D. Okla. Mar. 4, 1999) (Miles-LaGrange, J.) (citations omitted).

As to the other Defendants' purported scienter, the Opposition simply repeats allegations already destoryed by the Motion to Dismiss. Opp. at 23, 26. It falsely claims scienter can be evidenced by Defendants' executive positions (Opp. at 24, 26)[14], by their SOX certifications (*id.*)[15] and by their knowledge of the "increased debt created by the VPPs." *Id.* Absent specific allegations, such conclusory allegations are patently insufficient to establish scienter. *See* MTD at 8 n. 7, *citing In re Pre-Paid Sec. Litig.*, CIV-01-0182-C, slip op. at 8 (W.D. Okla. Mar. 5, 2002) (Cauthron, J.) (dismissing Section 10(b) case because "Plaintiffs are required under the PSLRA to show a court when, where and how a fraud was perpetrated"), *aff'd* 189 F. App'x 702, 718 (10th Cir. 2006).

**D.       PLAINTIFFS MISSTATEMENT ALLEGATIONS ARE REFUTED BY BOTH FEDERAL DISCLOSURE GUIDELINES AND CHESAPEAKE'S FILINGS**

The Opposition generally ignores the Motion to Dismiss' detailed explanation of how Chesapeake's disclosures satisfied federal disclosure guidelines. *See* MTD at 13-22. Instead, it repeats allegations proven to be demonstrably untrue -- Mr. McClendon "only paid for the land that 'spudded' wells" (Opp. at 6); the VPPs constituted "debt" (*id.* at 15) -- and continues to cite disclosure obligations that do not exist. *See* Opp. at 13-14 (arguing Chesapeake had a duty to disclose Mr. McClendon's personal finances).

---

[14] *See, e.g.*, MTD at 8, *citing City of Phila. v. Fleming Cos., Inc. (Fleming I)*, No. CIV-96-853-M, slip op. at 16 (W.D. Okla. Mar. 4, 1999) (Miles-LaGrange, J.)

[15] *See* MTD at 24-25 & n. 38 (collecting cases).

But despite Plaintiffs' admonition that the Court **must** accept their repeated misreadings of public documents and federal law "as true" (Opp. at 12), the Court is well within its authority to consider the full text of documents targeted in the Complaint and to interpret federal law. [16]  Under reasonable review, the Complaint's allegations are completely undermined by the very documents on which they purport to be based.

### 1.     Chesapeake Properly Disclosed the Details of the FWPP

The Complaint alleges that Chesapeake's disclosures on the FWPP were misstated in three ways.  As the Motion to Dismiss detailed (and the Opposition itself further reveals), none is sufficient to satisfy the pleading requirements of the PSLRA.

**First**, the Complaint insists Chesapeake was required to disclose Mr. McClendon's "FWPP loans" because they were "undeniably" part of a "related party transaction."  *See* Opp. at 8, 13-14.  As the Motion to Dismiss establishes, however, Chesapeake was never a "related party" to Mr. McClendon's lenders (MTD at 18), was never part of Mr. McClendon's loan transactions (*id.*), had no duty to disclose his personal financial information (*id.* at 17 n. 4), and had actually long disclosed that Mr. McClendon made "personal financing transactions" involving his FWPP interests.  *Id.* at 17 (citations omitted).  Plaintiffs counterargue that the "magnitude" of the loans should have also been disclosed.  Opp. at 11.  But again, there can be no omission absent a duty

---

[16] *See* Request for Judicial Notice and Consideration of Documents in Support of Defendants' Motion to Dismiss Consolidated Class Action Complaint for Violations of Federal Securities Laws ("RJN"), at 1-2 (*citing Tellabs*, 551 U.S. at 322 (on a motion to dismiss "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on a Rule 12(b)(6) motion to dismiss, in particular, documents incorporated in the complaint by reference, and matters of which a court may take judicial notice")).

to disclose (*see* Opp. at 11), and Plaintiffs can cite no rule that would require disclosure of an executive's personal finances simply because they reached a certain "magnitude."[17] Nor do they even **attempt** to distinguish Defendants' cited cases to the contrary.  *See* MTD at 17, *citing In re Safeguard Scientifics,* 2004 WL 2700291, at *2 (E.D. Pa. Nov. 18, 2004); *City of Omaha Emp. Ret. Sys. v. CBS Corp.*, 2010 WL 1029290, at *13 (S.D.N.Y. March 16, 2010).[18]

**Second**, the Complaint alleges that Chesapeake was required to disclose Mr. McClendon's "FWPP loans" because they were borrowed from some of Chesapeake's same lenders.  Compl. ¶¶ 78-79.  The result was the "**possibility** of *quid pro quo* arrangements" (Opp. at 2)[19], and, according to Plaintiffs, "[e]ven the possibility of a

---

[17] The Opposition again cites ASC 850 and Item 404(a) of Regulation S-K to argue Chesapeake had a duty to disclose Mr. McClendon's personal loans.  Opp. at 13. But both of those disclosure rules explicitly govern **transactions** between the Registrant, or **Chesapeake**, and "**any related person[s]**," which are defined to be "any director or executive officer" of the Company, their immediate family members, and five-percent holders.  *See* MTD at 17, n. 24.  *See* Opp. at 8, *quoting* Reg. S-K (requiring disclosure of "any other information regarding **the transaction** . . .").  Despite Plaintiffs' efforts, those rules simply cannot be re-read to require Chesapeake to disclose the details of Mr. McClendon's separate and unrelated personal financial transactions with a third-party.

[18] Cases cited in the Opposition are inapposite to the situation here, and all stand for the unremarkable proposition that transactions **between related parties** must be disclosed.  *See, e.g.*, *Zagami v. Natural Health*, 540 F. Supp 2d 705, 713 (N.D. Tex. 2008) (complaint sufficiently alleged nondisclosures of related-party transaction between Company and its insiders); *Snellink v. Gulf. Res.*, 870 F. Supp. 2d 930, 934, 941 (C.D. Cal. 2012) (complaint sufficiently alleged nondisclosures of related-party transaction where Company's biggest customer was a related company).

[19] Elsewhere the Opposition asserts that the "loans created clear conflicts of interests" (at p. 11), but noticeably does not cite to any place in the Complaint where such "clear conflicts" are specifically alleged.  *Id.*  Likewise, it asserts that there was an "obvious *quid pro quo* -- better personal terms for McClendon in exchange for continuous corporate business, or worse, inferior terms for Chesapeake," but again, that conclusory statement ends without any cite to the Complaint.  Opp. at 7.

conflict of interest is material" and demands disclosure.  *Id.* at 11.[20]  Plaintiffs can cite no

duty to disclose based on "possible" conflicts, and in any event, Chesapeake has long

disclosed Mr. McClendon could enter into "personal financing transactions" involving

his FWPP interests.  *See* MTD at 17.  Absent **specific** allegations to show some **actual**

conflict existed, the conclusory "possibility" that a conflict existed is irrelevant to the

PSLRA analysis.[21]

   **Third**, the Complaint alleges Chesapeake was required to disclose Mr.

McClendon's loans because they were "a material element" of his compensation.

Opp. at 8.  But the Motion to Dismiss affirmatively established that the FWPP was **not**

"compensation" to Mr. McClendon (MTD at 15-16), that he had to pay for his FWPP

interests (*id.* & n. 18), and that, as his personal interests, he could dispose of them as he

pleased.  MTD at 17.

   ## 2.    THE VPP DISCLOSURES WERE COMPLETE AND ACCURATE

   The Motion to Dismiss affirmative establishes that the VPP allegations are without

merit.  MTD at 19-22.  In response, the Opposition simply repeats the same baseless

---

[20] The Opposition's cited authority is facially inapposite to the question of whether "possible" conflicts of interest must be disclosed.  *See* Opp. at 12, *citing Kunz v. S.E.C.*, 2003 WL 1605865 (10th Cir. March 28, 2003) (broker found liable under NASD Rule of Conduct 2110 after evidentiary hearing revealed he failed to disclose a financial interest in the issuer of securities he was selling); *Zagami v. Natural Health*, 540 F. Supp 2d 705, 713 (N.D. Tex. 2008) (complaint sufficiently alleged nondisclosures of related-party transactions between Company **and its insiders**).

[21] The same holds true for the Complaint's unsupported allegation that the FWPP created a conflict between Mr. McClendon and Chesapeake.  *See, e.g.*, Opp. at 8 ("the FWPP incentive for McClendon to drive Chesapeake to acquire land without regard to cost" required disclosure).  Putting Plaintiffs' unfounded conjecture to one side, the Complaint alleges no specific facts to show Mr. McClendon ever had a conflict of interest with Chesapeake resulting from the FWPP.

allegations and (again) ignores Defendants' actual disclosures and the relevant SEC and GAAP rules. For example, the Opposition reiterates the Complaint's allegation that VPPs are "off balance sheet arrangements" under Section 401(a) of SOX and Item 303(a)(4) of Reg. S-K (Opp. at 4), but ignores Defendants' showing that "Item 303(a)(4), the implementing rule for Section 401(a), is confined to a specific definition of 'off-balance sheet arrangements'" that simply does not apply to Chesapeake's VPPs. MTD at 21 & n.30.

The Opposition likewise repeats the conclusory assertion that Chesapeake's accounting treatment of VPPs violated accounting rules (Opp. at 16), but cannot point to any accounting rule that Chesapeake supposedly violated, and offers no response to Defendants' showing that Chesapeake "accounted for the VPPs appropriately in accordance with Rule 4-10 of Reg. S-X, which governs financial accounting and reporting for oil and gas producing activities" like VPPs. MTD at 21. Nor do Plaintiffs offer a response to Defendants' showing that "neither the SEC nor the company's outside auditors has suggested Chesapeake needs to restate its financial statements." *Id.* at 21-22; *see, e.g.*, *In re Novastar Fin., Inc. Sec. Litig.*, 2008 WL 2354367, at *3 & n.1 (W.D. Mo. June 4, 2008) ("it is noteworthy that nobody – the SEC, Novastar's auditors, or anyone else – has suggested Novastar should or must restate its financial reports"), *aff'd*, 579 F.3d 878 (8th Cir. 2009).

Similarly, the Opposition repeats the allegation that "the VPPs increased – not reduced – debt by a huge, undisclosed amount relative to the Company's total liabilities" (Opp. at 15), but ignores the judicially-noticeable fact that the Company "has sold

approximately 1.37 trillion cubic feet of natural gas equivalent (tcfe) of proved reserves [via VPPs] for combined proceeds of approximately $6.4 billion, or approximately $4.65 per mcfe, which is approximately **300% more** than the company's current drilling and completion cost per mcfe."  Ex. 29.

The Opposition also repeats the allegation that Chesapeake "concealed debt" (Opp. at 15), but then **concedes** Defendants' point (MTD at 19) "that the VPPs are 'sale transactions' that do not constitute debt,' . . . do not create any 'debt or liability to place on the balance sheet," and instead create "a 'future obligation' to incur production costs to deliver oil and gas."  Opp. at 16.  Chesapeake disclosed repeatedly that it bears the cost of the production costs associated with the VPPs.  MTD at 20.  Moreover, Plaintiffs do not seriously challenge the fact that production costs were reported in the Company's financial statements as they were incurred and were projected into guidance, along with all of the Company's other production costs.[22]  MTD at 19.[23]

Thus, boiled down to basics, Plaintiffs beef is not that Defendants failed to include VPP production costs in the Company's financial reports and future guidance, but that they did not disaggregate VPP production costs from other operating expenses.  Opp.

---

[22] The Opposition says that Defendants "acknowledged to the press . . . that the Company had not disclosed its VPP debts" (Opp. at 17), but that is simply not true.  Mr. Mobley told the press that while future VPP production costs were not "specifically broken out, the company reflected th[ose] [costs] in its guidance on future operating costs."  Ex. 32 at 2.

[23] Plaintiffs argue that "VPPs' operating costs were [not] included in the projected guidance," because the "May 1, 2012 'Outlook' that Defendants point to [supposedly] excludes VPP production costs" (Opp. at 17-18), but Plaintiffs have clearly misread the May 1, 2012 Outlook, which plainly states that it "**includes** the estimated production decreases . . . **associated with** . . . **VPP and other monetization transactions**."  Ex. 30.

at 17.  But neither GAAP nor SEC rules require Chesapeake to disaggregate and report future production costs by type.  And, in any event, Plaintiffs fail to explain how the failure to disaggregate VPP production costs could possibly conceal the Company's overall production costs, or "debt," as Plaintiffs claim.

## CONCLUSION

Lacking any of the particularized factual allegations required by the PSLRA, any showing that any Defendant had fraudulent intent or, indeed, even a coherent theory of fraud, the Complaint should be dismissed with prejudice.

Dated:  February 22, 2013

**Orrick, Herrington & Sutcliffe LLP**
Robert P. Varian (Admitted Pro Hac Vice)
Kenneth P. Herzinger (Admitted Pro Hac Vice)
M. Todd Scott (Admitted Pro Hac Vice)
Alexander K. Talarides (Admitted Pro Hac Vice)


By:  _____*/s/ Robert P. Varian*_____
            ROBERT P. VARIAN

The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile:   (415) 773-5759
rvarian@orrick.com
kherzinger@orrick.com
tscott@orrick.com
atalarides@orrick.com

Spencer F. Smith, OBA #20430
McAfee & Taft A Professional Corporation
211 North Robinson, Suite 1000
Two Leadership Square, 10th Floor
Oklahoma City, OK  73102
Telephone:  (405) 552-2246
Facsimile:     (405) 235-0439
spencer.smith@mcafeetaft.com

*Attorneys for Defendants Chesapeake Energy*
*Corporation, Aubrey K. McClendon, Domenic J.*
*Dell'Osso, Jr., Marcus C. Rowland, Michael A.*
*Johnson, Jeffrey L. Mobley, and Henry Hood*

16

## CERTIFICATE OF SERVICE

I, Robert P. Varian, certify that on the 22nd day of February, 2013, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

- John E. Barbush            j.barbush@coxinet.net
- David Keesling             drk@rrbklaw.com; jlh@rrbklaw.com
- Heidi L. Shadid            hshadid20@gmail.com; hls@rrbklaw.com
- Charles F. Alden, III      lawyer0187@aol.com; lshahan@okcmidtownlaw.com, meredithjohnson@aol.com
- Kevin H. Cunningham        Kevin@basslaw.net; Nhurst@basslaw.net
- Jeremy A. Lieberman        jalieberman@pomlaw.com; lpvega@pomlaw.com
- Joseph A. Fonti            jfonti@labaton.com
- Serena Hallowell          shallowell@labaton.com
- Cynthia A. Hanawalt        chanawalt@labaton.com

_s/Robert P. Varian_____
  Robert P. Varian