**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DVORA WEINSTEIN and STEVEN S. WEINSTEIN, Individually and On Behalf of All Others Similarly Situated,  )<br>)<br>)<br>)<br>Plaintiffs,  )<br>)<br>vs.  )<br>)<br>AUBREY K. MCCLENDON, DOMENIC J. DELL'OSSO, JR., MARCUS ROWLAND, MICHAEL A. JOHNSON, JEFFREY L. MOBLEY, HENRY HOOD, and CHESAPEAKE ENERGY CORPORATION,  )<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendants.  ) | Case No. CIV-12-465-M |

## ORDER

Before the Court is defendants' Motion to Dismiss Consolidated Class Action Complaint for Violations of Federal Securities Laws, filed December 6, 2012. On January 23, 2013, lead plaintiff Ontario Teachers' Pension Plan Board filed its response, and on February 22, 2013, defendants filed their reply.

I.   Introduction

This securities class action arises from a series of allegedly false statements and omissions which allegedly materially misled the public about defendant Chesapeake Energy Corporation's ("Chesapeake") real financial condition. Plaintiffs allege that defendants concealed two types of financial obligations incurred by Chesapeake and defendant Aubrey K. McClendon ("McClendon"), Chesapeake's Chairman and CEO at the time. First, plaintiffs allege that defendants concealed key obligations from a type of transaction called a Volumetric Production Payment ("VPP").[1]

---

[1] A VPP generates immediate cash in exchange for the delivery of gas over time.

Specifically, plaintiffs allege that defendants disclosed that Chesapeake executed six VPPs during the Class Period[2] and that it raised $3.6 billion but concealed that the VPPs obligated Chesapeake to incur significant future production costs totaling $1.4 billion.

Second, plaintiffs allege that defendants did not disclose that McClendon had accumulated more than $1.5 billion in personal debt, collateralized by the future production of Chesapeake's gas wells. Specifically, plaintiffs allege that Chesapeake allowed McClendon to buy a 2.5% interest in many of its gas wells through the Founder Well Participation Program ("FWPP") and that defendants repeatedly claimed that the FWPP fully aligned the interests of McClendon with Chesapeake. However, plaintiffs allege that McClendon secretly financed his stakes with loans from lenders who also did business with Chesapeake and that this created substantial conflicts of interests.

On April 26, 2012, the instant action was filed. On July 20, 2012, the Court appointed the Ontario Teachers' Pension Plan Board as lead plaintiff in this case. On October 19, 2012, lead plaintiff filed its Consolidated Class Action Complaint for Violations of Federal Securities Laws ("Complaint"). In the Complaint, lead plaintiff asserts the following claims: (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) promulgated thereunder against all defendants, and (2) violation of Section 20(a) of the Exchange Act against the individual defendants.[3] Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), defendants now move this Court to dismiss the Complaint in its entirety.

---

[2]The Class Period is the period between April 30, 2009 and May 11, 2012, inclusive.

[3]The individual defendants are Aubrey K. McClendon, Domenic J. Dell'Osso, Jr., Marcus Rowland, Michael A. Johnson, Jeffrey L. Mobley, and Henry Hood.

II.  Discussion

    A.  Pleading Requirements of the PSLRA

"[T]o state a claim under Section 10(b) of the [Exchange] Act and Rule 10b-5 a plaintiff must allege: (1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) with intent to defraud or recklessness; (4) reliance; and (5) damages." *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1257-58 (10th Cir. 2001) (internal quotations and citation omitted).  To curb abuse in private securities lawsuits, Congress enacted the PSLRA, which mandates a more stringent pleading standard for securities fraud actions.  First, the PSLRA requires that a complaint asserting a violation of Section 10(b):

> shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).  Second, the PSLRA heightens the standard for pleading scienter with the following requirement:

> in any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2).

> The term "scienter" has been defined by the Supreme Court of the United States as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).  The Supreme Court has further elaborated on the meaning of the term by stating: "The words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that § 10(b) was intended to

> proscribe knowing or intentional misconduct." *Id.* at 197, 96 S.Ct. 1375. Recklessness, defined as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it," can also satisfy the scienter requirement for Section 10(b). *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir. 1996) (citations and quotations marks omitted). Simple negligence, however, does not satisfy the scienter requirement.

*City of Phila.*, 264 F.3d at 1258. Further,

> allegations that the defendant possessed knowledge of facts that are later determined by a court to have been material, without more, is not sufficient to demonstrate that the defendant intentionally withheld those facts from, or recklessly disregarded the importance of those facts to, a company's shareholders in order to deceive, manipulate, or defraud.

*Id.* at 1260.

The Tenth Circuit has held that to establish scienter in a securities fraud case alleging non-disclosure of potentially material facts, the plaintiff must demonstrate that (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors. *See id.* at 1261. In pleading scienter, "the important issue [ ] is not whether Defendants knew the underlying facts, but whether Defendants knew that not disclosing the [underlying facts] posed substantial likelihood of misleading a reasonable investor." *Id.* at 1264. "The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." *Id.* at 1261.

4

Additionally,

> allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations or irregularities were the result of the defendant's fraudulent intent to mislead investors may they be sufficient to state a claim.

*Id.* at 1261 (internal quotations and citation omitted).

The United States Supreme Court has established the following prescriptions for a court faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action:

> *First*, faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. . . .
>
> *Second*, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. . . . The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. . . .
>
> *Third*, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences. . . .
>
> . . . To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the "most plausible of competing inferences," . . . . Yet the inference of scienter must be more than merely "reasonable" or "permissible" – it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

5

*Telltabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007) (emphasis in original).

  B.  <u>Application of Pleading Requirements to the Complaint</u>

  Reviewing the Complaint under the standards set forth above, the Court finds that plaintiffs have not sufficiently and with particularity pled facts giving rise to a "strong inference" of scienter as required by the PSLRA. As directed by *Telltabs*, this Court has assessed plaintiffs' allegations holistically, and based upon this assessment, the Court concludes that, taken collectively, these allegations do not give rise to a "cogent and compelling" inference that defendants intentionally or recklessly concealed that the VPPs obligated Chesapeake to incur significant future production costs totaling $1.4 billion or that defendants intentionally or recklessly concealed the loans McClendon took out to finance his participation in the FWPP. The Court further finds that a reasonable person would not deem any inference that defendants acted with intent to defraud, or even recklessness, at least as compelling as any opposing inference one could draw from the facts alleged.

  Specifically, the Court finds that the Complaint is devoid of any particularized factual allegations that would give rise to a strong inference that any defendant acted with the requisite scienter. Throughout the Complaint, plaintiffs group all defendants together and make generalized, conclusory allegations regarding scienter without any specific corroborating details. The allegations in the Complaint do not reference any meeting attended by any defendant, any internal report he received or reviewed, any internal email, or any other information that would tend to show that the particular defendant knew the "truth" about the facts that were purportedly misstated and knew that its non-disclosure would likely mislead investors. Specifically, in relation to McClendon, the Court finds that while the allegations in the Complaint may be sufficient to show that McClendon knew about the loans he took out to finance his participation in the FWPP, the Complaint is devoid of any

allegations that either individually, or collectively, would give rise to a strong inference that McClendon knew that not disclosing his personal loans would somehow mislead investors. Finally, in their Complaint, plaintiffs attempt to allege scienter based on defendants' management positions and involvement in the operations of Chesapeake. The Tenth Circuit has held that "the mere fact that the individual Defendants occupied senior positions in the company . . . is not sufficient to imply knowledge of the specific fact of [falsity or] materiality." *City of Phila.*, 264 F.3d at 1264.

Accordingly, the Court finds plaintiffs' allegations fail to satisfy the requirements of Section 78u-4(b)(2), and, therefore, the First Claim of plaintiffs' Consolidated Class Action Complaint for Violations of Federal Securities Laws must be dismissed.

### C.   Section 20(a) Claim

Section 20(a) provides for secondary liability for persons who "control" others found to be primarily liable under the Exchange Act. *First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891, 897 (10th Cir. 1992). Since the Court is dismissing the primary liability claim, this secondary liability claim must also be dismissed.

### III.   Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS defendants' Motion to Dismiss Consolidated Class Action Complaint for Violations of Federal Securities Laws [docket no. 75] and DISMISSES the Consolidated Class Action Complaint for Violations of Federal Securities Laws.

**IT IS SO ORDERED this 10th day of April, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE